A01A0012. COCHRAN et al. v. THE STATE.

(548 SE2d 417)

JOHNSON, Presiding Judge.

A jury found David Cochran guilty of aggravated sexual battery and two counts of child molestation for acts committed against his daughter.[1] His brother, Danny Cochran, was tried with him and found guilty of three counts of child molestation for offenses committed against the same victim, his niece.[2] Both men appeal, challenging the sufficiency of the evidence to support the convictions, challenging the trial court's denial of their motions for new trial based on the insufficiency of the evidence, and contending the trial court erred in denying their motions to suppress statements they made to police. Each of the enumerations is without merit, and we affirm.

1. We first examine the sufficiency of the evidence to support the convictions. On appeal, we do not reweigh the evidence but view it in a light most favorable to the verdict.[3]

---

[1] The indictment charged David Cochran with aggravated sexual battery for penetrating the victim's vagina with his finger and two counts of child molestation for placing his penis inside the victim's vagina and touching her on the breasts and vaginal area.

[2] Danny Cochran was indicted on three counts of child molestation for placing his penis in the victim's vagina, touching her on the breasts and vaginal area, and causing her to touch his penis.

[3] *Sanders v. State*, 245 Ga. App. 561, 562 (1) (538 SE2d 470) (2000).

A detective with the sheriff's office testified that the fourteen-year-old victim told him that the abuse started when she was about four years old. When no one else was home, David Cochran would come into her bedroom, take off her clothes, and have sexual intercourse with her. She reported that he also placed his finger inside her vagina. Afterward, David Cochran would tell the victim to get dressed and go into the kitchen so that her mother would not suspect anything when she returned. He also warned the victim that if she told anyone about what he was doing, she would regret it. The victim told the detective that her uncle, Danny Cochran, also had sexual intercourse with her and that both men fondled her. Danny Cochran, like his brother, threatened to hurt the victim if she told. Once, when the victim's sister walked into the room as Danny Cochran fondled the victim, he told both girls that if they told anyone, they would not live to tell anyone else. The victim told the detective that the men had been engaging in this type of behavior for as long as she could remember.

The detective testified that the victim's 13-year-old sister told him that she saw Danny Cochran touch the victim on her breasts and genital area. They told him to stop, but he refused.

David Cochran gave the detective a verbal statement in which he initially denied the allegations, then admitted that some of the allegations were true. David Cochran also wrote a statement for the detective. In the written statement, he denied the allegations, then stated that if he did commit the offenses, he would not commit them again, because he does not want his daughter to hate him.[4] He added that he "did it that [one] time." David Cochran said he was tempted by the manner in which his daughter was dressed and that she was "so [filled] out." He admitted that he felt her breasts and buttocks and that he had sex with her three times since she was eleven years old.

Danny Cochran also gave the detective a written statement. In it, Danny Cochran wrote that "it started" when the victim was ten years old. He reported that once, as he stood in the bathroom urinating, the victim came in, put her hand on his penis, and rubbed it for five minutes. About a month later, the victim approached him, "and one thing [led] to another." Danny Cochran admitted that he rubbed his penis against the victim's vagina. He later started feeling badly about doing this and stopped.

A caseworker testified that she interviewed the victim on the night the victim first made the allegations of abuse. The victim told

---

[4] David Cochran's handwritten statement is replete with misspelled words and is somewhat difficult to decipher. We believe, however, that his phonetic spelling has made the intended meaning at least generally ascertainable.

the caseworker that her father started molesting her when she was about four years old and that her uncle started abusing her two years later. The victim told her that they fondled her and had sexual intercourse with her. The victim added that her uncle stopped having sex with her two years ago, but that he continued to fondle her. Her father had last had sex with her about two days before the disclosure.

A hospital nurse testified that the victim told her that her father and uncle had been molesting her since she was about four years old. The nurse conducted a physical exam of the victim. Her findings were consistent with the victim's allegations that she had had sexual intercourse.

When called as a witness for the state, the 14-year-old victim testified that she had falsely accused her father and uncle of sexually abusing her because she was mad at them. She acknowledged having told the detective that they abused her, that her father had sex with her, put his finger inside her vagina, and touched her breasts with his hands, but added that these incidents did not actually occur and she was afraid to retract her accusations because she thought she might get in trouble. She testified that she was now telling the truth so as to keep from causing two innocent people to be sent to prison. However, the victim admitted on cross-examination that she told the prosecutor a week before trial that a letter she had written retracting her allegations was false; she had retracted her allegations in hopes of being allowed to go home. The victim also admitted telling the prosecutor the day before trial that her allegations were true and that the men did in fact abuse her.

The victim's sister testified that the victim had told her that her father and uncle "touched her," then asked her not to tell anyone. The sister testified that she told the detective that she saw Danny Cochran touch the victim. At trial, however, she denied having seen him touch the victim improperly, saying that she told this to the detective only because she was afraid at the time she made the statement and did not know what she was doing.

A therapist who had been treating the victim testified that the victim had described to her the sexual abuse as having really happened and that recantation is not uncommon in this type of situation.

Another psychologist, testifying as an expert witness, stated that children who have been sexually abused often recant their allegations of abuse. According to the expert:

A child says it happened and then [says] it didn't happen. Why? Well, if you look at what happens after a child discloses, and you've ever known a child who has disclosed and gone through the whole process in talking with the police, dealing with the Department of Family and Children Ser-

vices, their world gets turned upside down. Life is not like it was, particularly if the abuser is a family member.

The expert witness added that many times the child does not want the abuser punished and wants the person to remain in her life, or blames herself for the abuse or for the effect her disclosure has had on the family, and thinks she can remedy matters by saying she made false accusations.

Notwithstanding the victim's and her sister's recantations, the evidence, taken as a whole, was sufficient to find both men guilty beyond a reasonable doubt of the charged offenses.[5]

2. David and Danny Cochran complain that their statements to the detective should have been suppressed because they were not given voluntarily due to their low intelligence levels. They note that they both were in special education classes and that they dropped out of school in the eighth and tenth grades. They add that they were not informed of the charges against them, that they were isolated from family members at the time, and that the detective told them that they were facing "thirty to forty years" in prison. After reviewing the totality of the circumstances under which the statements were made, we agree with the trial court that the statements were made voluntarily.

The question of whether a defendant waives his *Miranda* rights and makes a voluntary and knowing statement depends on the totality of the circumstances.[6] On appeal, the standard of review is whether the trial court was clearly erroneous in its factual findings on the admissibility of the statement.[7]

The evidence shows that David Cochran went to the detective's office voluntarily, accompanied by his family, and that he was not in custody at the time he made his statement. The detective explained the allegations against David Cochran thoroughly, and David Cochran said he understood them. The detective did not read David Cochran his *Miranda* rights, since he was not under arrest at the time. David Cochran told the detective that he could read and write, and he wrote his own statement. David Cochran stated that he has held regular employment for the last five years and was able to follow rules. Pursuant to a court order, a psychologist evaluated David Cochran and found him to be competent to assist his attorney and to stand trial and found that he seemed to understand the psychologist's warning that he did not have to talk.

---

[5] See *Wilson v. State*, 234 Ga. App. 375 (1) (506 SE2d 882) (1998); *McCormick v. State*, 228 Ga. App. 467-468 (1) (491 SE2d 903) (1997).

[6] *Henry v. State*, 264 Ga. 861, 862 (2) (452 SE2d 505) (1995).

[7] Id.

As for Danny Cochran, the detective explained to him the allegations and explained his *Miranda* rights. At the detective's request, Danny Cochran read a segment of the written warnings aloud. His reading was fine. The detective read the rest of the rights aloud. Danny Cochran then wrote part of his statement and, upon becoming emotional, asked the detective to write the rest for him. After the statement was written, Danny Cochran read it and stated that he did not want to add to, delete, or otherwise change the statement. The detective noted that Danny Cochran spoke quickly and was alert and logical when they talked initially and that it was only after the suspect learned of the extent of the allegations against him that he began speaking slowly and acting less intelligent. A psychologist found Danny Cochran competent to assist his attorney and stand trial and determined that he was able to understand instructions that he did not have to speak to the psychologist if he did not want to do so.

Following the *Jackson-Denno* hearing, the trial court reviewed the evidence and found that both men made their statements voluntarily. The trial court's findings are amply supported by the evidence and, because they are not clearly erroneous, are affirmed.[8]

*Judgment affirmed. Ruffin and Ellington, JJ., concur.*

DECIDED MARCH 21, 2001.

*Avrett, Ponder & Withrock, William B. Barnwell*, for appellants.
*Kermit N. McManus, District Attorney, Herbert M. Poston, Jr., Assistant District Attorney*, for appellee.

---

[8] See id.; *Attaway v. State*, 244 Ga. App. 5, 7 (534 SE2d 580) (2000).